IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES LINING,<br>    Plaintiff,<br><br>    vs.<br><br>TEMPORARY PERSONNEL SERVICES,<br>INC. and AMERICAN BRIDGE<br>MANUFACTURING COMPANY. | Civil Action No. 07-01724<br>Judge Nora Barry Fischer |

## MEMORANDUM ORDER

This matter is before the Court on Plaintiff's Motion for Attorneys' Fees and Expenses [22], filed by Plaintiff James Lining on May 7, 2008, in which Plaintiff requests an award of attorney's fees in the amount of $17,191.25 (based on 40.45 hours at $425 per hour) as well as paralegal fees, costs and expenses. (Docket No. 24 at ¶5). On May 19, 2008, Defendant filed Defendants' response to Plaintiff's Motion for Attorney Fees and Expenses. (Docket No. 23). On June 23, 2008, Plaintiff filed Plaintiff's Supplemental Brief in Support of his Fee Petition (Docket No. 29).

### STANDARD

Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, district courts are authorized to award prevailing parties reasonable attorney's fees in civil rights litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). In order to ensure persons with civil rights grievances receive "effective access of the judicial process[,]" a prevailing plaintiff should recover such reasonable attorney's fees "unless special circumstances would render such an award unjust." *Id*. (quoting H. Rep. No. 94-1558, p. 1 (1976), S. Rep. No. 94-1011, p. 4 (1976)). To the contrary, a prevailing defendant may recover attorney's fees where "the suit was vexatious, frivolous, or

brought to harass or embarrass the defendant." *Hensley*, 461 U.S. at 429; (quoting H. Rep. No. 94-1558, p. 7 (1976)). In short, a plaintiff seeking to recover attorney's fees must show (1) the plaintiff is the prevailing party; and (2) the attorney's fees are reasonable. Defendants do not dispute that Plaintiff is a prevailing party in this matter.

A prevailing party is not automatically entitled to compensation for attorney's fees in their entirety; rather the party seeking such attorney's fees bears the burden to prove the reasonableness of its request. *Interfaith Community Organization v. Honeywell*, 426 F.3d 694, 711 (3d Cir. 2005); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Therefore, the amount of the attorney's fees must turn on the facts in each case, and the district court should determine what fee is reasonable. *Hensley*, 461 U.S. at 433. Indeed, the House Report refers to twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n. 3. Such factors aim to award fees "which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." *Hensley*, 461 U.S. at 433 n. 4.

The Supreme Court has stated that the initial estimate for attorney's fees is obtained by multiplying a reasonable hourly rate by a reasonable number of hours expended in the litigation. *Hensley*, 461 U.S. at 433. This formula, often referred to as the lodestar, serves as an objective basis to make an initial assessment of the "value of the lawyer's services." *Id; see Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986) (explaining the genesis of the lodestar approach and its nomenclature). While courts have taken different approaches to establish the reasonable hourly rate, the United States Court of Appeals for the Third Circuit has adopted the community market rate approach." *Student Public Interest Research Group of New Jersey, Inc. v. AT&T Bell Laboratories* (*SPRIG*), 842 F.2d 1436, 1448 (1988).[1] This community market rate rule requires the court to "assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the private

---

[1] The District of Columbia and the Eighth Circuit Courts of Appeal follow the "billing rate rule" which mandates the use of actual billing rates when possible, even where attorneys set their rates artificially low for public interest work. *SPIRG*, 842 F.2d at 1444. The Seventh and Eleventh Circuit Courts of Appeal follow the "micro-market rule" which applies the market rates, but it defines the market rates more narrowly. *Id.* at 1445. These courts look to what public interest lawyers actually receive, relying on the fact that: (1) an independent public interest market exists; (2) this market generates reasonable and fair fees; and (3) courts can rely upon this market in granting fees pursuant to fee shifting statutes. *Id.* at 1446. The final approach the Third Circuit rejects is the "modified billing rate" which involves a two-step process. *Id.* at 1446. The first step involves applying the firm's billing rate, although it may not reflect the firm's service's true value. *Id.* The second step involves a lodestar enhanced for contingency, which serves to reflect that inherent risk firms take on when undertaking public interest cases. *Id.*; *see Pennsylvania v. Delaware Citizens' Council for Clean Air*, 438 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (discussing contingency multipliers).

business sphere." *Id.* at 1447.[2] The prevailing party also bears the burden of establishing that its requested hourly rate meets this comparable market standard by way of satisfactory evidence "in addition to [the] attorney's own affidavits." *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Once the prevailing party has made out its prima facie burden, as prescribed by the community market rate lodestar test, if the opposing side has not produced evidence to the contrary, the district court "may not exercise its discretion to adjust the rate downward." *Ridley v. Costco Wholesale Corp.*, 217 Fed. Appx. 130, 139 (3d Cir. 2007).

Attorneys seeking compensation for their fees also must document their hours with "sufficient specificity." *Washington*, 89 F.3d at 1037. Specifically, "[a] fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Id.* (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990)). As such, where the hourly documentation is inadequate, the district court may reduce the prevailing party's hours. *Hensley*, 461 U.S. at 433. The prevailing party's fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates" to determine adequate documentation. *Washington*, 89 F.3d at 1037-38. Nevertheless, the prevailing party need not go so far as to "know the

---

[2] While there may be a drawback by compensating public interest lawyers beyond the amount necessary to attract them to the case, this fee shifting rule aims to provide reasonable fee reimbursement. *Id*. at 1448.

4

exact number of minutes spent nor the precise activity to which each hour was devoted or the specific attainments of each attorney." *Id.* In *Keenan v. City of Philadelphia*, the United States Court of Appeals for the Third Circuit found that "computer-generated summaries of time spent by each attorney and paralegal met the standards of *Rode*." 983 F.2d 459, 473 (3d Cir. 1992).

If the opposing party makes specific objections to the attorney's fees, the United States Court of Appeals for the Third Circuit has held "it is necessary to go line by line through the billing records supporting the fee request." *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001). It is then incumbent upon the court to "exclude those [hours] that are excessive, redundant or otherwise unnecessary." *Interfaith Community Organization v. Honeywell*, 426, F.3d 694, 711 (3d Cir. 2005).

**ANALYSIS**

In their response, Defendants object to the following: (1) time expended on specific tasks; (2) counsel for Plaintiff's hourly rate; and (3) the work of a paralegal, asserting that it amounted to secretarial work. The Court will consider Plaintiff's motion in this manner.

1.  *Objections to specific tasks*

Defendants object to the following specific tasks: (1) 5.2 hours expended preparing Plaintiff for his deposition; (2) 1 hour expended preparing a "form fee petition," (Docket No. 27 at ¶4); and (3) 3.5 hours expended in preparing a response to Defendants' discovery motion, "upon which Defendants substantially prevailed,"

(Docket No. 27 at ¶4).³ Taken together, Defendants only object to 9.7 hours by counsel for Plaintiff as "excessive billing." (Docket No. 23 at 6). The Court disagrees with Defendants on all accounts.

First, as to preparation for Plaintiff's deposition, Defendants merely (and boldly) assert that the same is "excessive." (Docket No. 23 at ¶35). In the Court's estimation, approximately five (5) hours to prepare for the deposition of the named Plaintiff is comfortably reasonable, especially in an employment discrimination case where said testimony is so significant (and possibly dispositive).

Second, as to the fee petition, Defendants attempt to draw parallels between counsel for Plaintiff's instant fee petition and another fee petition filed in another case by the same counsel as evidence that 1 hour is unreasonable. (Docket No. 23 at ¶1). Specifically, Defendants assert that eighteen of the twenty-nine paragraphs are identical and thus, "the fee petition and accompanying affidavits were simple forms for Plaintiff's Counsel to prepare." (Docket No. 23 at ¶¶1, 34).

Generally speaking, the Court surmises that counsel on both sides of the aisle reuse law from past yet similar cases on which respective counsel worked. Even considering the similarities between counsel for Plaintiff's instant fee motion and another fee motion, the Court still finds with little trouble that a mere one hour for the same is reasonable.

---

³ The Court notes that Plaintiff filed a motion seeking discovery as to "information concerning the amount of time Defendants' attorneys expended in defending this case." (Docket No. 24 at ¶5). The Court denied said motion. (Docket No. 28).

Third, as to the hours expended on Defendants' discovery motion, the Court granted in part and denied in part said discovery motion. (See Docket No. 19). In fact, the Court found that Plaintiff's counsel had complied with the Federal Rules but nonetheless allowed a second deposition "in the interests of fairness." (Docket No. 19 at 2-3). Furthermore, Defendants fail to point to any case law or rule indicating a correlation between denial of fees and success/failure during motions practice. In fact, case law demonstrates to the contrary. *See Blum v. Witco Chemical Corp.*, 829 F.2d 367, 378 (3d Cir. 1987) (providing that "the Supreme Court has rejected the notion that the fee award should be reduced 'simply because the plaintiff failed to prevail on every contention raised in the law suit' ") (quoting *Hensley*, 461 U.S. at 435)). Further, the mere failure of a motion "is insufficient to warrant a fee reduction under *Hensley*." *Id.*

2.  *Hourly rate*

Defendants object to counsel for Plaintiff's hourly rate, namely $425 per hour. Specifically, Defendants contend that Plaintiff has not proffered any evidence as to: (1) a fee agreement where Attorney Cordes charges $425 per hour; (2) any employment attorney charging his or her clients $425 per hour; or (3) any judge in this District awarding $425 per hour. (Docket No. 23 at 4). Additionally, Defendants contend that Attorney Cordes's fee increase from $350 to $425 per hour represents a percentage increase that is inconsistent with the inflation rate. (Docket No. 23 at 32). The Court will address each in turn.

  A. *<u>Fee Agreement</u>*

While Defendant contends that Plaintiff does not proffer any evidence of a fee agreement stipulating $425 per hour as the billing rate, Plaintiff claims that such

7

evidence is unnecessary. (Docket No. 23 at ¶22); (Docket No. 25 at 5). Specifically, Plaintiff emphasizes that the lodestar is the determinative factor for fee shifting jurisprudence. (Docket No. 25 at 5). Considering the Third Circuit's application of the community market rate for fee shifting awards, see *SPRIG,* supra, the Court finds this contention immaterial.

B. *__Employment Attorneys Charging Clients $425 per Hour__*

Defendants argue that $425 per hour is not the prevailing market rate by providing support of other comparable attorneys' rates. For example, Defendants contend that in the *DeFurio v. Elizabeth Forward*, 2008 WL 2518139 (W.D. Pa. 2008), this Court awarded Colleen Ramage Johnston $300.00 per hour and James W. Carroll $385.00 per hour. (See Docket No. 23 at ¶31(a)). Moreover, Defendants state that both attorneys have a well-respected reputation in the employment law industry and, while Attorney Johnston has been practicing for a few years less than Attorney Cordes, Carroll has been practicing longer than him. *Id*.

In support, Defendants rely on the affidavits provided by Maureen P. Kelly and Alan C. Blanco to support a rate of $350 per hour for Attorney Cordes. Specifically, Attorney Kelly, a shareholder of the employment and labor services group at Babst Calland, Clements & Zomnir, P.C., with twenty-one years of experience, declared in her affidavit that Attorney Johnston's rate of $300 per hour is the market rate for employment lawyers in Pittsburgh. (Docket No. 23 at ¶31(c)). Furthermore, Defendants state that Attorney Blanco, an attorney with over twenty years of experience, who practices exclusively employment law, only charges $345 per hour. (Docket No. 23 at ¶31(b)).

Plaintiff counters Defendants' claim by submitting affidavits of Timothy O'Brien, Colleen Johnston, James Leiber, Witold Walcak, and James Carroll, all of whom stipulate that $425 per hour is the reasonable market rate for Attorney Cordes's legal peers. (Docket No. 25 at 9). Attorney O'Brien states that he currently bills at $425 per hour, and he has been awarded fees at $400 per hour. *Id.* at 10. Attorney O'Brien declares that Attorney Cordes is his legal peer and this Court should award him $425 per hour. *Id.* Likewise, Attorney Walcak declares that the court has awarded him a community market rate of $400 per hour, and that Cordes is also his legal peer. Plaintiff also argues that employment defense attorneys bill at rates exceeding $400 per hour. (Docket No. 25 at 8).

As to Defendants' reference to the rates of defense lawyers, the United States Court of Appeals for the Third Circuit has declined to acknowledge such rates in the lodestar calculation because they focus on the market for *defense* attorneys.[4] *See Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996). Consequently, this Court will not take defense attorneys' rates into account when determining whether $425 per hour is a reasonable rate for Cordes.

C. ***Judges have awarded $400 per hour in this District***

Defendants claim that "it does not appear that any judge in the Western District has ever awarded $425 per hour." *Id*. Therefore, Defendants contend that this Court should not award an unprecedented hourly rate of $425 for Cordes. In response, Plaintiff

---

[4] Moreover, the undersigned Judge is well aware of defense market rates, particularly as paid by insurance companies. In that regard, counsel award discounts to such clients in exchange for repeated and sometimes voluminous assignments.

9

argues that this District has recently awarded employment/civil rights plaintiffs' attorney fees of $400. Specifically, Chief Judge Donetta Ambrose determined that $400 was an appropriate hourly rate for Timothy P. O'Brien, Jere Krakoff, and Witold J. Walcak, given their skill and experience. Accordingly, Plaintiff argues that Attorney O'Brien's award, coupled with O'Brien's affidavit (declaring that Attorney Cordes is his legal peer), is sufficient evidence for this Court to award Cordes's hourly rate of $425, as requested. (Docket No. 25 at 7-8).

While this Court acknowledges awards for Attorneys O'Brien, Krakoff, and Walcak, in the amount of $425 per hour, this Court has yet to find any Judge within the United States District Court for the Western District of Pennsylvania who has awarded $425 per hour to any plaintiff's employment lawyer and the instant Plaintiff's counsel has not demonstrated to the contrary.

### D. *Court's Determination of Reasonableness Regarding Plaintiff's Attorney's Hourly Rate*

"A court's role in determining a reasonable hourly rate is not passive, but, rather, it is a positive and affirmative function of the court." *Huu Nam Tran v. Metropolitan Life Ins. Co.*, Civil Action No. 01-262, 2006 WL 2623230, at *3 (W.D. Pa. Sept. 12, 2006). This District has held that "the Court's role in determining a reasonable hourly rate is not passive." *Catello v. Oriental Weavers Rug Mfg. Co., Inc.*, Civ. Action No. 01-1060 at 6 (W.D. Pa. 2003). In fact, the Court has a "positive and affirmative function in the fee-fixing process." *Id*. Here, Plaintiff bears the burden to establish that $425 is a reasonable hourly rate for Attorney Cordes's services. To support his counsel's rate, Plaintiff has submitted Attorney Cordes's affidavit, as well as the affidavits of James B.

10

Lieber, Colleen Ramage Johnston, Timothy P. O'Brien, Witold Walczak, and James W. Carroll.  Since these affidavits state that $425 is a reasonable hourly rate, Plaintiff argues that the Court should award $425 per hour.

Nevertheless, this Court fails to find $425 per hour as a reasonable rate for Attorney Cordes.  The Western District has held that "a lawyer's testimony that a certain hourly fee is reasonable is no more helpful than a lawyer's testimony that a certain product is defective, or certain contract language is ambiguous." *Williams v. City of Pittsburgh*, 2000 U.S. Dist. LEXIS 6739, at *5 (W.D. Pa 2000).  Indeed, these sworn statements are no more than "opinions" by Attorney Cordes's peers that his rates are reasonable.  *Id*.  Therefore, absent relevant evidence demonstrating what the testifying attorney charges for his work and what the clients will pay, this Court finds such statements merely persuasive.  Moreover, the Court notes that Attorney Cordes's marked increase of over 20% in his billing rate over the past year.[5]  Having considered all of the parties' submissions, this Court finds that $400 per hour is an accurate depiction of Cordes's market rate, and it is representative of his skill, experience, and reputation.  *See Risk v. Burgettstown Borough, Pennsylvania*, Civil Action No. 05-1068, Docket No. 134 at 4 (W.D. Pa. July 3, 2008) (awarding Attorney Cordes $400 per hour).

3. *Paralegal Rates*

---

[5] The increase in the billing rate is immaterial to determine the reasonableness of an attorney's billing rate insofar as the United States Court of Appeals for the Third Circuit employs the community market rate.  The Court is, however, concerned with the reasonableness of the proposed rate.

11

Defendants also object to Paralegal Melissa Dehner's time because she did not attend paralegal school. (Docket No. 23 at ¶ 36). Additionally, Defendants object to Paralegal Dehner's work asserting that she merely performed secretarial work. Plaintiff counters by arguing that Paralegal Dehner's work performed in this case constitutes legal recognized paralegal work and her lack of "formal education in legal studies" does not preclude her from billing as a paralegal. (Docket No. 25 at 22). Plaintiff further argues that Paralegal Dehner's work experience is sufficient to consider her as a paralegal for billing purposes. *Id.* at 25. Specifically, Paralegal Dehner has more than sixteen years of experience as a legal assistant, has earned an Associates Degree in Secretarial Sciences, and has performed services in this litigation which the Supreme Court would consider billable by a paralegal. *Id.* As to Defendants' argument regarding Paralegal Dehner's lack of formal paralegal training, the Court finds this argument to be without merit, insofar as Defendants fail to provide any legal support for their conclusion and said argument fails to consider Paralegal Dehner's sixteen years of relevant experience.[6] Therefore, this Court finds Paralegal Dehner to be a qualified paralegal for the instant purposes.

As to paralegal versus secretarial work, the Supreme Court in *Missouri v. Jenkins* stated that "it is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can

---

[6] Specifically, in March 1987, the National Association of Paralegal Associated adopted the following definition of a paralegal: "a person, qualified through education, training or work experience, to perform substantive legal work that requires knowledge of legal concepts and is customarily, but not exclusively, performed by a lawyer." 461 PLI/Lit 185, 198 April-June 1993.

often be accomplished by non-lawyers" so as to not increase the overall cost of litigation. 491 U.S. 274, 288 n. 10, 109 S. Ct. 2463, 2474 n. 10 105 L. Ed. 2d 229 (1989). Specifically, paralegal work may include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Id.*

The Court agrees with Defendants that Plaintiff should not be awarded fees that are merely secretarial in nature at a paralegal's billing rate. Therefore, the Court has scrutinized Paralegal Dehner's billing records, line by line, to determine what tasks may be billed at a reasonable paralegal rate and what are merely administrative tasks. Paralegal Dehner's services include as follows: drafting correspondence, preparing legal documents, filing legal documents, and emailing opposing counsel pertinent mediation information. This Court previously has awarded plaintiffs' paralegal fees for such work, even at rates surpassing the $80 per hour charged by Paralegal Dehner. *See Defurio*, 2008 WL 2518139, at * 12. Accordingly, this Court overrules Defendants' objections as to Paralegal Dehner's services, finding them both necessary and reasonable; therefore Dehner's services are awarded in full.

## CONCLUSION

The Court awards Plaintiff the following fees:Attorney Samuel J. Cordes: 40.45 hours at $400 per hour or $16,180; Paralegal Lea Anne McCabe-Ferita: 17.5 hours at $80 per hour or $1,400; and Paralegal Melissa Dehner: 9.1 hours at $80 per hour or $728. The Court also awards Plaintiff $1,169.78 in expenses.

Accordingly, based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees and Expenses [22] but with relief different than that requested. The Court awards Plaintiffs $19477.78 in attorney fees and expenses.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: July 31, 2008.

cc: All counsel of record